Wayne POOL and Grace Pool, Husband and Wife, Plaintiffs-Appellants,

v.

ST. ELM MORTGAGE CO., Inc., et al., Defendants-Respondents.

In the Matter of Redemption by Wayne and Grace Pool of Property in Craigmont, a Subdivision, Lee's Summit, Jackson County, Missouri, et al.

No. 55780.

Supreme Court of Missouri, Division No. 1.

March 13, 1972.

Motion for Rehearing and Transfer to Court En Banc Denied April 10, 1972.

Charles W. Hess, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, for plaintiffs-appellants.

Alan B. Slayton, Reese, Constance, Slayton & Stewart, Independence, for defendants-respondents.

LAURANCE M. HYDE, Special Commissioner.

Action for $136,672.00 damages, which originally sought an injunction against trustee's foreclosure sale under trust deeds. Foreclosure sale was held and plaintiffs sought to redeem but redemption was not completed. By stipulation the parties narrowed the issues to be tried and agreed that a judgment for $20,000.00 be entered against plaintiff on the counterclaim of defendant St. Elm Mortgage Co. After trial on plaintiffs' claim for damages, the court entered judgment for defendants and plaintiffs have appealed. We affirm.

By their stipulation, the parties agreed plaintiffs no longer had any interest in the property involved and plaintiffs waived any right of redemption. Any claim on plaintiffs' redemption bond was waived by St. Elm Mortgage Co. and J. R. Stewart, the purchaser at foreclosure. St. Elm also waived its claim against plaintiffs for the foreclosure sale deficiency but as stated was to have judgment against plaintiffs for $20,000.00. The sole issue left to be litigated was plaintiffs' claim for damages against St. Elm Mortgage Co. Plaintiffs claim they proved damages of at least $80,000.00 which included $36,000.00 for the value of the land plaintiffs furnished for the enterprise and the rest for anticipated profits that would have been received from the sale of lots taken over by St. Elm if plaintiff had been permitted to build houses on them.

Plaintiffs originally made arrangements with Efton Means, president of St. Elm Mortgage Co., for financing construction of houses on plaintiffs' land. Plaintiffs paid $36,000.00 for the land they furnished. A mortgage of $120,000.00 executed by plaintiffs was provided by St. Elm to be paid off at $2,500.00 per lot as houses were sold and released. The $120,000.00 was used for building streets, sewers, gas and water lines. Means also arranged for construction loans for plaintiffs for building houses. Plaintiffs signed nine construction

loan notes and mortgages arranged for by Means. Plaintiffs used this money to build houses but were unable to pay for all of the construction costs and liens were filed for material and labor. Plaintiffs' building was all done on this borrowed money and they put no money of their own into it. Defendants' evidence was that St. Elm had a loss of $24,596.17 for money advanced in excess of sales price of the houses built on the nine construction loans after paying the construction bills left unpaid by plaintiffs. The agreed judgment for St. Elm for $20,000.00 was for its claim to recover these payments as well as the foreclosure deficiency on the $120,000.00 land development mortgage.

The project began in 1965, when plaintiffs bought the land, borrowing part of the money they paid for it from a bank in Kansas City, Kansas, giving a mortgage on land they owned in Kansas. After plaintiffs' financial difficulties on the project, this mortgage was foreclosed and plaintiffs lost that land. The $120,000.00 land development mortgage was given April 1, 1966 and it was foreclosed August 16, 1968. Plaintiffs built nine houses but were not able to make all payments and could not close deals on some of them. Plaintiffs had released five lots to T. R. Boyd in February 1968 and had released another before the foreclosure sale. At the time of foreclosure 35 lots were left, Boyd having taken over more of the original 49. One stated purpose of the parties' stipulation was to quiet title to the lots conveyed to Boyd.

■ Plaintiffs citing Civil Rule 73.01(d), V.A.M.R., say we consider the evidence de novo and should find the trial court's finding that plaintiffs were not entitled to damages was not supported by any credible evidence. Of course, plaintiffs had the burden of proof and credibility of plaintiffs' testimony was a matter for the trial court. Rule 73.01(d) says: "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Plaintiffs' evidence as to anticipated profits seems speculative and would depend on plaintiffs' ability to build the houses at a cost within the amount of the construction loans and sell them at a profit, which he failed to do on those he did build. The testimony of plaintiff Wayne Pool was indefinite in some respects and there were things he did not remember. Apparently there was some profit on the sale of the first three houses built but at least after that mechanic's liens were filed which these profits were used to pay; and finally building was taken over by Boyd. The judgment of $20,000.00 against plaintiffs (agreed to by them) was for St. Elm's loss on the sale of the first nine houses. Thus the court's finding against plaintiffs' claim for anticipated profits certainly is not clearly erroneous but instead seems to us to be the reasonable conclusion.

■ It is true that plaintiffs lost the land they put into the project. Plaintiffs claim the foreclosure of the development loan was caused by the default of St. Elm, blaming Means for not paying the interest. St. Elm had sold the mortgage to Standard Title Insurance Co. to which it was liable on its endorsement. Plaintiffs say Means handled all the money used on the project and could have prevented default by paying the interest when due. However, a reasonable finding from all the evidence, which no doubt was the trial court's view, seems to be that plaintiffs' failure to comply with his contract to build houses and pay for their construction costs was the cause of the default on $120,000.00 development loan. Plaintiffs failed to make profits expected on the nine houses they began to build, did not fully complete them or pay in full the bills for their construction. This resulted in mechanic's liens being filed which St. Elm had to pay and Boyd taking over. It is admitted in plaintiffs' brief: "St. Elm paid out $20,000.00 more than it took in ultimately." However, they say this was the result of defendants' acts and not plaintiffs'. On the

whole record, our conclusion is that the trial court could reasonably take the view that default was due to plaintiffs' failure to complete the houses and pay their construction costs. Although plaintiffs say Means handled all the money, paid interest and loan commitment fees and intermingled loan proceeds contrary to FHA regulations, it does not appear that this prevented plaintiffs from constructing the houses, paying their costs from the construction loans so that the $2,500.00 required to release each from the development loan mortgage could be paid. In short, plaintiffs' default is a reasonable finding.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

HOLMAN, P. J., SEILER, J., and PRITCHARD, Special Judge, concur.

BARDGETT, J., not sitting.